(No. 19680.—

SELMA MAGNES, Appellee, *vs.* JACOB I. TOBIAS, Appellant.

*Opinion filed December 20, 1929—Rehearing denied Feb. 8, 1930.*

DANIEL WEBSTER, for appellant.

AARON SOBLE, for appellee.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

Selma Magnes, who is appellee here, filed her bill in the circuit court of Cook county in July, 1928, seeking to set aside a deed to certain improved real estate owned by her in the city of Chicago. The deed to the property was issued to Jacob I. Tobias and Dan Webster by the bailiff of the municipal court of Chicago on May 5, 1928, pursuant to a sale thereof to them under an execution. The bill sought permission to redeem the property from such sale and to enjoin Tobias, who is appellant here, and Dan Webster, appellant's attorney, from interfering with appellee's tenants and the payment of rents by them, the institution of any proceedings against appellee, or the transfer, sale or encumbering, by mortgage or otherwise, of the real estate described in the bill. The tenants of the three-story brick building located upon the premises involved were made defendants to the bill and were defaulted. Tobias and Webster answered the bill denying the material allegations therein, and later filed a cross-bill praying an accounting for rents due. The cross-bill was answered and a hearing was had before the chancellor. A decree was entered in February, 1929, dismissing appellant's cross-bill for want of equity and granting the prayer of appellee's bill upon the payment by her to appellant of the sum of $125, which was the amount tendered by her to appellant in open court. From that decree an appeal has been perfected to this court by Jacob I. Tobias.

The facts disclosed by the record are substantially as follows: Appellee obtained title to the lot in question in December, 1925, and the deed therefor was duly recorded in the recorder's office of Cook county. The property was improved with a three-story brick building and was known as 1717-1719 West Division street, Chicago. It was occupied by three tenants, who up to the time of the filing of

the bill, and since then by order of court, have been paying rent to appellee in amount of $300 per month. Appellee has been in possession of the property through her tenants since the time of its purchase in December, 1925, has paid the taxes levied against it since that time, including the taxes for the year 1927, which were paid on July 30, 1928, and has also paid the interest and made some payments on the principal of the first mortgage upon the property. Since the filing of the bill appellee has paid an additional $1500 on the mortgage, making the present indebtedness about $10,000. In April, 1923, appellee and her husband entered into a lease with appellant, whereby a certain part of the third floor of the premises was demised to appellant, to be occupied as a tailor shop for a two-year term beginning May 1, 1923. Some difficulty arose between the lessors and the lessee, which resulted in appellee and her husband, as lessors, obtaining a judgment by confession, under the terms of the lease, against appellant in the municipal court of Chicago. This judgment by confession was opened and appellant permitted to appear and defend. Thereafter a jury was impaneled, and appellee and her husband suffered a voluntary non-suit to be entered against them, with costs in favor of appellant. This judgment for costs was entered on the 8th day of November, 1926. Certain affidavits of the attendance of witnesses were filed by appellant's attorney, which were taxed by the clerk of the municipal court as part of the costs. The total judgment for costs as entered was in amount of $86.45. During the latter part of November, 1926, an execution was issued out of the municipal court commanding the bailiff of that court to cause to be made or collected the sum of $86.45 out of the lands, tenements, goods and chattels of appellee and her husband. The execution was placed in the hands of a deputy bailiff, and on the first day of December he made a return of the execution that he served appellee and her husband with copies of the execution. On January 6, 1927,

a levy was made of the execution upon the real estate described in appellee's bill, and the property was sold on February 2, 1927, for the amount of the judgment and accruing costs to appellant and his attorney, Daniel Webster, the latter of whom bid thereon the sum of $107.73. The bailiff executed a certificate of sale to Dan Webster and Jacob I. Tobias, stating therein that the purchaser would be entitled to a deed to the premises unless redeemed on or before May 3, 1928, and a copy thereof was recorded in the recorder's office of Cook county on February 7, 1927. On May 5, 1928, the equity of redemption having expired, the bailiff's deed here in question was issued and recorded in the recorder's office of Cook county on May 8, 1928. During the early part of July, 1928, appellant and his attorney served notices in writing upon the three tenants of the premises in question, stating that appellant and Webster were the owners of the property, that all rents were then payable to them as owners, and that in default of such payments of rents legal action would be taken to terminate the leases and oust the tenants from possession. Appellee states that this was the first notice she had of any of the proceedings resulting in the issuance of a bailiff's deed to her property. She immediately employed counsel to represent her, and he communicated with appellant's counsel and offered to pay the latter the amount due as shown by the bailiff's deed, together with an additional $200 for expenses or attorney's services in connection with the levy and sale. The offer of $307.73 was finally refused by counsel for appellant, who stated his client preferred to retain the property. This offer and communication between counsel for the parties is denied by appellant's attorney. It is also denied by appellant that appellee did not know about the issuance of an execution at the time as well as concerning the proceedings following.

The record shows the value of the property was about $35,000, that appellee's equity therein was approximately

$25,000, and the rental of the premises was $300 per month. It appears that appellee and her husband at the time of the issuance of the execution were engaged in business in Chicago on West Division street, also at another place on Milwaukee avenue, and resided at 2049 Pierce avenue. The bailiff's return on the writ of execution is that he served both Selma Magnes and her husband with a copy of the writ. However, appellee testified the bailiff did not serve her with a copy of the writ at any time, and this is corroborated by the testimony of the deputy bailiff, who states he served both copies of the execution upon Jacob Magnes at the latter's place of business on West Division street. Appellee's husband testified he was not served with a copy of the writ of execution at any time or place.

The chancellor found the facts involved in the controversy to be substantially in accordance with the evidence presented by appellee and as alleged in her bill. He further found that the sale was for a grossly inadequate price and contrary to equity and good conscience; that several irregularities appeared in the proceedings, among which were, that no demand for payment of the execution was ever made upon either appellee or her husband by the bailiff; that the bailiff's return on the execution was false; that appellant was not a *bona fide* purchaser; that appellant and his attorney were familiar with and knew the value of the property at all times during the proceedings; that they remained silent and at no time notified appellee or her husband of their alleged title and interest in the premises until after the equity of redemption had expired. The decree allowed redemption of the property in accordance with the tender made in open court by appellee, ordered the temporary injunction against appellant made permanent, and dismissed appellant's cross-bill for want of equity.

It is the contention of counsel for appellant that the court erred in canceling the bailiff's deed issued to himself and appellant upon the payment by appellee to them of the

sum of $125, and also in dismissing the appellant's cross-bill seeking an accounting of rents produced from the property here involved.

The hearing was had before the chancellor on oral and documentary evidence. There was some conflicting testimony between appellee and appellant. Appellant's contention was that the execution against appellee was served on both appellee and her husband and demand made for payment before the levy was made. This was denied by appellee's testimony, and, as far as serving appellee with the execution is concerned, the deputy bailiff who served it testified he did not serve it upon her; that he left a copy with the man he supposed to be her husband, at his place of business. The court found from the evidence that appellee was never served with or notified of the execution, and that she had no actual knowledge of it until after the deed was executed to appellant and he and his attorney had demanded payment of the rent from the tenants of the building. The court stated in his opinion, which is quoted from largely by both parties, that it was clear the sale was made and subsequent proceedings were a means for wrongfully obtaining possession of the property, and that that wrongful intent continued throughout the time of redemption and up to the hearing of this case.

Appellant also insists that service of the execution and demand for property was not necessary. Whether section 28 of the Cost act (Smith's Stat. 1929, p. 802,) applies or not, appellee was not served with the execution, and one cannot read this record without being convinced that the actions of appellant and his attorney, Webster, in levying the execution, selling the land at judicial sale and acquiring the deed to it, were conducted in a manner well calculated to leave appellee in ignorance that her property had been sold. It is very evident from the record that she did not intend to abandon the property, for she reduced

the principal of the mortgage on the property to $10,000 after the sale, also collected rents from the property and paid the taxes assessed against it. After appellant had notified the tenants on the property to pay him the rent appellee became aware of the fact her property worth $35,000, subject to an incumbrance of $11,500, had been sold to appellant and Webster for $107.73 to pay a judgment for $86.45 rendered against appellee. The price for which the property was sold was grossly inadequate. In sales under judicial process where there is a right of redemption, inadequacy of price unaccompanied by circumstances of irregularity or unfairness will not avoid a sale. It has been uniformly held by this court that where property has been sold at judicial sale for a grossly inadequate price, even slight circumstances indicating unfairness or fraud will furnish sufficient grounds for equitable interference. (*Wilkinson* v. *Cox*, 228 Ill. 306; *Davis, Cory & Co.* v. *Chicago Dock Co.* 129 id. 180; *Block* v. *Hooper*, 318 id. 182.) It also appears that appellee had ample resources, both personal and real, to pay the judgment for costs had she been notified it was demanded by appellant.

In appellant's effort to sustain the deed to appellee's property he contends that the tender made by appellee was approximately five dollars too small. We cannot say appellant is right and do not think it is a valid claim to make in defense of this action by appellee. We agree with the circuit court that when appellant receives the amount of his judgment, interest and costs he will have received all that is due him and has no claim on the property for anything more.

The decree is affirmed. *Decree affirmed.*