KAIBAB INDUSTRIES, INC., Plaintiff-Appellant, *v.* FAMILY READY HOMES, INC., *et al.*, Defendants-Appellees.

Third District   No. 77-241

Opinion filed January 19, 1978.—Rehearing denied April 12, 1978.

Anthony P. Corsentino, of Sweat, Sweat & Corsentino, of Peoria, for appellant.

Thomas E. Leiter, of Leiter and Leiter, of Peoria, for appellees.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

In this citation proceeding brought by plaintiff-creditor, Kaibab Industries, Inc., to discover assets of defendant-debtor, B. F. Waldsmith, plaintiff appeals from an order denying plaintiff any right to certain funds which had been transferred by defendant to his adult children, Gary, Terry, and Linda Waldsmith, and also refusing to permit additional proceedings to allow plaintiff to subpoena certain corporate records.

Plaintiff obtained an Arizona judgment for $133,269 against defendant B. F. Waldsmith on December 10, 1973. The judgment was subsequently entered in Peoria County under the Uniform Enforcement of Foreign Judgments Act (Ill. Rev. Stat. 1975, ch. 77, par. 88 *et seq.*), and in 1975 a citation proceeding was filed in Tazewell County to discover assets which defendant might have fraudulently conveyed to his children. Several evidentiary hearings were held at which plaintiff established that

defendant had transferred three parcels of real estate to his daughter Linda Waldsmith in October of 1973 without receiving any consideration for the property. During 1973 and 1974 defendant transferred to his children substantial sums of money from two corporations of which he was president and chief executive officer. A First Federal Savings and Loan check for $202,085 drawn on the account of Projects Management, Inc., was endorsed by defendant to Linda on May 17, 1974. This sum, along with another $200,000 which had been transferred earlier from Projects Management, Inc., to the defendant's children, was invested in a $415,000 certificate of deposit which was subsequently combined with the proceeds from another $100,000 certificate and on September 15, 1974, was invested in a $515,000 certificate payable to Terry, Gary or Linda. This certificate was cashed on November 14, 1974. A bank employee recalled that Terry, Gary and Linda wanted $1,000 bills and that they placed the currency in a safety deposit box. Terry, Gary and Linda testified that they removed the cash on November 17, 1974, with Gary stating that he took $20,000 for himself, and Terry saying that he gave the remaining $495,000 to defendant for him to manage. All three children insisted that the money did not belong to defendant, but was given to him to invest.

Twenty-two-year-old Linda professed to know next to nothing about her own financial situation. She stated that she receives interest from her money which was originally a gift from either her grandfather or her father, that she did not know how much of the $515,000 belonged to her, that her brothers give her money to live on, that she signs whatever papers or checks she is told to sign, and that "I don't ask any questions, I just spend." Her brother Terry stated that he manages Linda's financial affairs and that she doesn't know anything about the property she owns.

Gary and Terry were both stockholders in defendant's corporations. They testified that in 1973 they and Linda contributed $200,000 to an investment pool to furnish funds needed by defendant, and that the May 17, 1974, check for $202,085, endorsed by defendant to Linda, was repayment of that 1973 loan. Defendant's brother Andy Waldsmith, a Mesa, Arizona, real estate broker, testified that at Andy's request, in 1973, defendant provided $212,000 for interim financing to prevent an Arizona real estate deal from falling through, and that the buyers repaid the loan on February 15, 1974. Andy personally delivered the repayment sum to defendant. It was deposited first in the account of Rooster I corporation, then was transferred to a Projects Management, Inc., account, and later was transferred to Linda, eventually becoming a part of the $515,000 certificate that was ultimately converted to cash. Both Terry and Gary testified that these transfers of funds were legitimate business transactions

between the two corporations, but no notes or other documents were introduced to verify the existence of an investment pool or to indicate the amounts contributed by the investors.

Other testimony established that defendant has left Illinois and now resides in Florida and travels between Florida, Colorado and Arizona.

After the August 21, 1976, hearing, plaintiff sought to subpoena the records of the two corporations. The trial court denied that request and concluded that no useful purpose would be served by further proceedings. The court set aside defendant's 1973 conveyances of three parcels of real estate to Linda, but declined to enter judgments against Gary, Terry and Linda as recipients of funds and participants in the fraud on creditors. Plaintiff appeals from that order.

■■ First, we note that defendant argues that the trial court erred in setting aside the three conveyances of real estate as fraudulent; however, the record does not indicate that a cross-appeal was filed, and we are therefore precluded from considering that issue. *King v. Corsini* (3rd Dist. 1975), 32 Ill. App. 3d 461, 335 N.E.2d 561.

■ Second, defendant has filed a motion to dismiss the appeal on numerous grounds, only two of which need be discussed. Plaintiff has not filed an abstract or excerpts of the record as required by Supreme Court Rule 342 (Ill. Rev. Stat. 1975, ch. 110A, par. 342), and not one of the 10 volumes of the report of proceedings was certified as correct by the trial judge as required by Supreme Court Rule 323(b). The latter contention was raised in *Ray v. Winter* (5th Dist. 1976), 39 Ill. App. 3d 567, 350 N.E.2d 331, where the court ruled:

> "[S]ince plaintiff has not indicated that the report of proceedings in the instant case is either incomplete or inaccurate or that he is prejudiced by the lack of certification by the trial judge, and since the report is presumed true and accurate unless otherwise shown, we will treat the report as if properly certified and proceed to discuss the merits of the appeal." (39 Ill. App. 3d 567, 575, 350 N.E.2d 331, 338.)

Since defendant here does not claim that the uncertified transcript is incomplete or inaccurate or that he is otherwise prejudiced by the absence of the judge's certification, the presumption that the report of proceedings is true and correct (Rule 329) will be invoked, and we will, in the exercise of our discretion, consider the report as if properly certified.

■■ Plaintiff has declined to prepare either an abstract or excerpts of the record as required under Supreme Court Rule 342 and has not sought a waiver of the rule. Instead, plaintiff urges this court to read the transcript in its entirety, which in effect asks us to search the record for errors. In the interest of seeing justice done, and with the greatest reluctance, we deny

defendant's motion. By so doing, we do not mean to condone plaintiff's cavalier disregard for the rules of the supreme court, and will not hesitate to dismiss an appeal where appropriate.

Plaintiff contends that the evidence was sufficient to give rise to a presumption of fraud which would, in effect, shift the burden of proof to defendant to establish the *bona fides* of the transactions. (*Alan Drey Co. v. Generation, Inc.* (1st Dist. 1974), 22 Ill. App. 3d 611, 317 N.E.2d 673.) Certain circumstances are so commonly associated with fraud as to have earned the title "badges of fraud," and when present in sufficient number, may give rise to an inference or presumption of fraud. (*Zwick v. Catavenis* (1928), 331 Ill. 240, 162 N.E. 869; *Alan Drey Co. v. Generation, Inc.*) Plaintiff here has shown several such indicia of fraud including (1) an existing indebtedness and pending litigation at the time the funds were transferred, (2) the transfer of funds from a parent to his children, (3) the conversion of exceedingly valuable bank deposits into currency which was a departure from the usual method of business, and (4) the absence of any documents indicating the purpose of the transactions. (See 37 Am. Jur. 2d *Fraudulent Conveyances* §10 (1968); 37 C.J.S. *Fraudulent Conveyances* §82 (1943).) We believe this evidence was sufficient to create a presumption of fraud.

The next question is whether defendant rebutted the presumption and established the *bona fides* of the questioned transactions. Defendant's evidence indicated that $200,000 of the funds were repayment of a loan which had been used by defendant to provide interim financing for a real estate transaction involving his brother. Whether this explanation was persuasive or not, no evidence of any sort was offered to explain the transfer of the remaining $315,000 to Gary, Terry and Linda. Thus, it is our opinion that defendant totally failed to sustain his burden of proof as to at least $315,000 of the funds in question.

In support of the judgement of the trial court, defendant contends that plaintiff failed to prove that these transfers in fact impaired the rights of creditors. However, plaintiff did demonstrate that defendant had left the State of Illinois, in effect rendering him unable to pay his indebtedness; such evidence has been held to be equivalent to proof of insolvency. (*Till v. Till* (1st Dist. 1967), 87 Ill. App. 2d 358, 231 N.E.2d 641.) Considering all of the evidence in the record, defendant's inability to pay his debts was sufficiently shown.

The record does not indicate, however, whether any of the disputed funds were returned to one or both of defendant's corporations, or whether defendant's corporate holdings represent assets which could be reached by plaintiff. Therefore, in order to insure justice between the litigants, we believe the parties should be allowed further discovery, particularly as to the corporate records.

For the reasons stated, the judgment entered by the Circuit Court of Tazewell County as to the three parcels of real estate is affirmed, but the remainder of the order is reversed and the cause remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed in part and remanded.

ALLOY and SCOTT, JJ., concur.